IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| | : |
| HERMAN KLAYMAN | : |
| DEBTOR | :CASE NO. 04-30648 |
| | : |
| HERMAN KLAYMAN | : |
| PLAINTIFF | : |
| V. | : |
| UNITED STATES OF AMERICA | : |
| DEFENDANT | : ADVERSARY PROCEEDING NO. 04-1120 |
| | : |

# OPINION

By:   STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

The Debtor has filed suit against the United States for a declaratory judgment pursuant to 28 U.S.C. § 2201(a)[1] that certain tax liability is dischargeable.   *See* Complaint.  He proposes to deal with that claim in this Chapter 11 case.  Complaint, ¶ 10.  The Government opposes the complaint and now moves for summary judgment. For the reasons set forth below, the Government's motion will be granted.[2]

*The Government's Claim.*

The Government alleges that Klayman has willfully evaded payment of taxes due for the years 1972 through 1974 and 1976 through 1977.  Motion, p.2; Government's

---

[1]That statute provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201(a).

[2]Because the Complaint seeks to have a debt excepted from the Debtor's discharge, it constitutes a "core proceeding" within this Court's subject matter jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(I)

Brief, p.15.  For that reason, the Government asserts that its claim is not dischargeable

in this bankruptcy proceeding.  Motion, p.2.; Government's Brief, p.2.

*The Standard for Summary Judgment*

It is the Government's position that the record so overwhelmingly demonstrates

evasion on Klayman's part that the matter should be disposed of on summary judgment.

Transcript of Hearing, September 20, 2005 (Transcript) 2.  Motions for summary

judgment are governed by Rule 56 of the Federal Rules of Civil Procedure

("Fed.R.Civ.P.").[3]  Pursuant to Rule 56, summary judgment should be granted when the

"pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202 (1986). The moving party has the burden of demonstrating that no genuine issue of

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91

L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh

evidence, but rather to determine whether the evidence presented points to a

disagreement that must be decided at trial, or whether the undisputed facts are so one

sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. at 249, 252, 106 S.Ct. at 2511-12. In making this determination, the court

---

[3] Fed.R.Civ.P. 56 is applicable to the instant proceeding pursuant to Rule 7056 of the
Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.")

must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.* Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*Applicable Law*

As a general bankruptcy principle, tax obligations which were incurred more than three years before the date of the bankruptcy filing are typically dischargeable under section 523.  *Schlesinger v. United States, (In re Schlesinger)*, Adv. No. 01-0088,

Memorandum Opinion and Order, p.11, October 31, 2002, (Bankr.E.D.Pa.) (Fox, Chief

J.) *citing In re McKay*, 957 F.2d 689, 691 (9th Cir. 1992).  Among the exceptions to this

general principle are the provisions of § 523(a)(1)(C):

> (a) A discharge under section 727 ... of this title does not
> discharge an individual debtor from any debt--
> (1) for a tax or a customs duty--
> …
> (C) with respect to which the debtor made a fraudulent return
> or *willfully attempted in any manner to evade or defeat such
> tax*.

11 U.S.C. § 523(a)(1)(C) (1994) (emphasis added).  There is no limitation period on this

exception; any tax liability involving a fraudulent return or a willful attempt to evade or

defeat payment of the tax liability is nondischargeable, whenever it arose.  *Schlesinger*,

12.  These exceptions to discharge are to be strictly construed in favor of the debtor.  *In

re Fegeley*, 118 F.3d 979, 983 (3d Cir.2000).  Moreover, "the burden of proving that the

debtor's tax liabilities are nondischargeable under § 523(a)(1)(C) is on the United

States." *Berkery v. Commissioner*, 192 B.R. 835, 840 (E.D.Pa.1996), *aff'd*, 111 F.3d

125 (3d Cir.1997).  And the Government must prove its case by a preponderance of the

evidence.  *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755

(1991).

    The Court must interpret this provision of "the Bankruptcy Code according to [its]

plain meaning of [the] individual provision as long as the provision's language is

unambiguous."  *In re Fegeley* 118 F.3d 979, 983 (3d Cir. 2000) (*citing United States v.

Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41, 109 S.Ct. 1026, 1029-30, 103 L.Ed.2d

290, 109 S.Ct. 1026, 1030 (1989)).  "Where statutory language is not expressly defined,

that language should be given its common meaning." *Id.* (*citing Burlington N.R.R. Co. v.*

*Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404(1987)). "The plain language of the second part of § 523(a)(1)(C) comprises both a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so 'willfully')." *Fegeley,* 118 F.3d at 983 *citing In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996) (quoting 11 U.S.C. § 523(a)(1)(C)).

*The Debtor's Conduct*

The use of the phrase "in any manner" indicates that " 'Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.' " *In re Fegeley,* 118 F.3d at 983 *quoting Dalton v. I.R.S.*, 77 F.3d 1297, 1301 (10th Cir.1996) (*quoting Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418, 63 S.Ct. 364, 368 (1943)).  The Third Circuit has offered several examples of acts that would constitute evasion of payment: placing assets in the name of others; dealing in currency; causing receipts to be paid through and in the name of others; and causing debts to be paid through and in the name of others.  *In re McGill*, 964 F.2d 222, 230 (3d Cir. 1992).  The leading bankruptcy commentator identifies essentially the same indicia:

> Tax evasion may be proven by a course of willful concealing of assets, dealing in cash, shielding income and otherwise frustrating various tax collection efforts where the debtor clearly knows that attempts to collect the tax are being made.  Nonpayment of taxes coupled with affirmative acts to avoid payment or collection of taxes can be sufficient to render the tax debt nondischargeable.

4 *Collier on Bankruptcy* ¶ 523.07[4] (Matthew Bender 15th Ed. Revised).  The

Government's motion asserts that the record demonstrates that Klayman, in one way or

another, has done all of these things.  *See generally* Motion.  The Court agrees.

*Placing Assets in
the Name of Others*

In December 1980,  the Government issued to the Debtor a notice of tax

deficiency.  Government's Statement of Material Facts Not in General Dispute (Gov't's

Facts), ¶1 and Plaintiff's Response.  At that time, he owned a condominium on Locust

Street in Philadelphia.  Government Ex. 101, Memorandum and Opinion, Findings of

Fact (FF) #1.  Eighteen months after being notified of the tax deficiency, Klayman

transferred title to that condominium to his wife and himself by the entireties for

consideration of $1.  Gov't's Facts ¶6 and Plaintiff's Response.  Two years after that

transfer, the United States Tax Court entered a stipulated judgment against Klayman for

approximately $300,000.  *Id.* ¶2 and Plaintiff's Response.  Five weeks later, and on the

very same day that the Government assessed Klayman for those tax deficiencies,

Klayman and his wife gave Industrial Valley Bank (IVB) a mortgage on the condominium

to secure a $100,000 loan.  Government Ex. 101, FF ## 9,10.   In May 1990, the United

States District Court for the Eastern District of Pennsylvania ruled that Klayman's

transfer of the condominium to his wife and himself was a fraudulent conveyance.   *See*

*id.* Conclusions of Law (CL) #11.  The District Court would order the Klaymans to pay

both the proceeds of the IVB loan and the profit from their subsequent sale of the condo

to the Government.  *Id.*, Order

Notwithstanding the District Court ruling, Klayman continues to maintain the legitimacy of his transfer of the condo to his wife and himself.  Response, ¶ 10. Klayman explains that unless the condo was placed in her name as well as his, it would have been subject not only to an IRS lien but also to a guaranty which Klayman had given to IVB.  *Id.* ¶ 11.  This would also, he says, have otherwise left his wife with no place to live.  Assuming that all of this is true, however, it has nothing to do with whether the transfer was fraudulent.  More importantly, the Government argues that the District Court finding precludes Klayman from disputing that he made a fraudulent conveyance. *See* Government's Brief, 12.  The Court turns to that question.

Issue preclusion, known traditionally as collateral estoppel, "prevents the relitigation of issues that have been decided in a previous action."  *Hawksbill Sea Turtle v. Federal Emergency Management Agency*, 126 F.3d 461, 474 (3d Cir. 1997).  *See Montana v. United States*, 440 U.S. 147, 153 (1979)) ("Once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").  "Issue preclusion is based upon the policy that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'"  *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 547 (3d Cir. 1996) (*quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991)).  As the Third Circuit explained "[t]he doctrine of issue preclusion reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves judicial resources, and 'encourage[s] reliance on adjudication.'"  *Dici*, 91 F.3d at 547 (*quoting Allen v. McCurry*, 449 U.S. 90, 94, 101

-7-

S.Ct. 411, 415 (1980)).   The doctrine's core requirements are (1) the issue sought to be

precluded must be the same as that involved in the prior action; (2) that issue must

have been actually litigated; (3) it must have been determined by a valid and final

judgment; and (4) the determination must have been essential to the prior judgment.

*National Railroad Passenger Corp. v. Pennsylvania Public Util. Comm'n*, 288 F.3d 519,

525 (3d Cir. 2000).  The Government raises the same issue here as it did before the

District Court: whether the Klaymans transferred their condo to hinder creditors.  *See*

Government Ex. 101, CL #11.  That the issue was litigated vigorously by the Klaymans

is demonstrated in the Opinion.  *Id.*, pp. 5-6.  The decision was reduced to judgment

(*see* Government Ex. 102) and was the essence of the Government's claim.  *See*

Government Ex. 101 CL ## 8-12.  In short, all of the requirements for collateral estoppel

are met to preclude Klayman from arguing that the transfer of the Locust Street property

was not a fraudulent conveyance as to the Government.

Other pieces of real estate were handled similarly by Klayman.   In November

2000 Klayman and his second wife D'Anne divorced.  At the time, D'Anne owned a

condominium located on 18th Street in Philadelphia.  Their property settlement required

Klayman to buyout her interest in the condo and to pay her $95,000.  D'Anne would

then transfer that property to either Klayman or his designee.  Government Ex. 105, ¶6.

To do this, Klayman asked friends to loan the purchase money to Herkly International,

Inc., his Subchapter S corporation (*see* Government Ex. 103, Klayman Dep. 150-52[4]),

---

[4]Both parties' pleadings cite to Klayman's deposition; however, neither party attached the
complete transcript.  Both attach excerpts which, as expected, differ at various points.  Therefore,
"Klayman Dep., [ ]" is a citation from the Government's attachment.  For citations from the
(continued...)

who would buyout D'Anne's interest in the condo.  Klayman guaranteed the loan which remains unpaid.  *Id.* at 151-152.  Title to the condominium was deeded to Herkly (Government Ex. 109), but Klayman continues to live there and was living there on the date this bankruptcy was filed.  *See* Voluntary Petition.  All Klayman offers in response to this is that he is paying rent on the unit.  See Response to Gov't's Facts, ¶ 36.

Klayman's Subchapter S corporation also holds the leasehold interest in another condominium at the Academy House in Philadelphia.  Klayman Dep. 63-64.  This condominium is occupied by Klayman's daughter Ashley who pays rent not to the corporation, but to Klayman.  *Id.* 65-68.

*Dealing in Currency*

Klayman typically deals in cash and has Herkly, the corporation, pay his current, non-cash expenses, such as credit card and utility bills.  *Id.* 61.  Also, the rent which he receives from his daughter Ashley is paid in cash.[5]  *Id.* 66-67.  Prior to this bankruptcy, Klayman cannot recall when he last held a checking account, either individually or jointly.  Gov't's Facts, ¶ 38; Klayman Dep. 212.  Klayman offers the dubious explanation that it is easier for him not to keep two sets of books.  *See* Response to Gov't's Facts, ¶ 38.

*Payment of Debts and*
*Receipts Through Others*

---

[4](...continued)
attachment of Klayman, the words "Plaintiff's Response" will follow the cite.

[5]And significantly, this monthly cash payment is not disclosed on the Debtor's Schedule I. *See* Bankruptcy Schedule I.

Klayman created Herkly International, Inc. (Herkly), his Subchapter S corporation, in 1989.  Klayman Dep. 14.  Since 1994, Klayman has been Herkly's only employee.  *Id.* 127.  Herkly has acted in the capacity as agent for two meat packers referenced in the record: Star Pork  (now defunct) and Premier Pork LLC (presently operating).  *Id.* 15, 33, 120-121.  As compensation, both Star Pork and Premier Pork would pay Herkly (*id.* 40, 74, Plaintiff's Response) who, in turn, would pay Klayman in the form of either distributions or wages.  *See* Gov't's Facts, ¶24 and Plaintiff's Response.  But because Klayman has no checking account, he endorses those checks which he receives from Herkly back to Herkly who pays his current bills.  Klayman Dep. 61-64, 212.  He even does the same with his Social Security check.  Klayman Dep. 62.  The Debtor's response to all this is that the accountant for Herkly and Klayman carefully segregates his personal expenses from business expenses.  *See* Kirk Deposition, 22 attached to Plaintiff's Response.  Whether that is true or not it in no way explains the need to have Klayman's personal expenses paid through the corporation.

Likewise, the Government alleges that Herkly also either leased or owned a number of expensive automobiles for Klayman's benefit.  Gov't Facts ¶ 29; Government's Brief, 2.  The corporate tax return for 1998 lists four vehicles for depreciation purposes: two Jeeps (a 1991 and a 1997), a 1998 Mercedes and a 1987 Ferrari.  *See* Government Ex. 111.  That same year, Herkly sold a 1995 Porsche.  *See id.*, Form 4797 Sale of Business Property.  When asked at his deposition about the use of these cars, Klayman explained that he used the Mercedes and Jeep entirely for

business, the Jeep being used for inclement weather.[6]  He used the Ferrari 50% for

business.  Klayman Dep., 402-404 Plaintiff's Response, Klayman Dep. 405-406.  His

response to the motion adds that not all of the cars were owned at the same time.  *See*

Response to Gov't's Facts ¶ 29.   And the 1999 corporate tax return shows that he

would sell the Ferrari that year.  But even if his use of the vehicles were successive,

such an explanation fails to justify why what was essentially a one-man operation

needed so many high-end vehicles and at a time when Klayman was severely indebted

to the Government.

*Acts of Omission*
*on Klayman's Part*

It is not only affirmative acts which may constitute evasion.  Section 523(a)(1)(C)

encompasses acts of culpable omission as well as acts of commission.  *Fegeley*, 118

F.3d at 983 citing *In re Bruner*, 55 F.3d 195 (5th Cir.1995) and *In re Toti*, 24 F.3d 806

(6th Cir.1994).  It is the Government's position that over an eight year period Klayman

earned over $1.5 million from Herkly yet made no payment whatsoever towards the tax

debt.  Government's Brief, 1.  Klayman's response is two-fold.  He admits to making the

income alleged by the Government but points out his annual income over that period

fluctuated greatly from as low as $61,000 to $328,000.  Plaintiff's Response to Gov't's

Facts ¶ 26.   Secondly, he points out that for the years 2001 through 2003 the majority

of the reported income constituted "phantom,"[7] or passive, non-cash income passed

---

[6]The deposition did not shed light on why two Jeeps were needed or whether the second
Jeep was subsequently sold.

[7]This is a known drawback to Subchapter S status.  Shareholders must pay tax on their
share of the corporation's profits, even if those profits are not distributed to the shareholders as
(continued...)

through from Herkly, his Subchapter S corporation.   *See* Response to Gov't's Facts ¶ 24; Klayman Dep. 47-49 attached to Plaintiff's Response; *see also* Government Ex. 118-120, Form 1040 for 2001-2003, Schedule E.   Neither of these reasons, however, explains why *no* payment at all was made toward his tax debt for the previous years. *See In re Scarpiello*, 240 B.R. 203, 209 (Bankr.E.D.Pa. 1999) (holding that failure to make any tax payment despite having resources sufficient to pay all or a substantial portion of tax liability constitutes evasion); *In re Lacheen*, 2005 WL 1155257 *4 (Bankr.E.D.Pa.) (explaining that debtors' silence regarding why they did not make any tax payments notwithstanding their considerable income has direct bearing on whether their conduct warranted excepting tax debt from discharge); *In re Doyle*, 276 F.Supp.2d 415, 424 (W.D.Pa.2003) (holding that even where taxpayer did not have the financial means to pay all of the taxes owed, the taxpayer still willfully evaded tax obligation)

In summary, the record plainly reveals that over a twenty five year period Klayman has engaged in a systematic course of frustrating the Government's attempt to collect a tax debt.   Real estate was placed in the hands of third parties, bank accounts were avoided, and income was made payable to entities not subject to attachment.   All this would occur without Klayman's lifestyle suffering.   He would continue to enjoy the use and benefit of these assets without ownership of them.   All of this constitutes acts of evasion.

*The Debtor's State of Mind*

---

[7](...continued)
dividends.  *A.W. Chesterton Company, Inc. v. Chesterton*, 128 F.3d 1 *3 n.1 (1st Cir. 1997)

But does the record establish that Klayman did all this willfully?  Klayman argues

that the willfulness language in the second prong of § 523(a)(1)(C) should be

interpreted consistently with a finding of fraudulent intent not to pay.  Transcript, 6.  The

Government disagrees maintaining that "willfulness" is the applicable mental standard.

*Id.*, 9.  The Third Circuit supports the Government's position.  *See* Fegeley, 118 F.3d at

984 (requiring a finding of "civil willfulness").  The Third Circuit "ha[s] interpreted

'willfully,' for purposes of § 523(a)(1)(C), to require that the debtor's attempts to avoid

his tax liability were 'voluntary, conscious, and intentional.' " *Id. citing Birkenstock*, 87

F.3d at 952; *see also Dalton*, 77 F.3d at 1302.  In order to prevail the Government need

establish only that the Debtor: (1) had a duty to pay the assessed tax liability; (2) knew

of the duty; and (3) voluntarily and intentionally violated that duty.  *Id.*

As of December 1980, when the tax delinquency was assessed, a duty arose on

the Debtor's part to pay this debt.  In that same month, the Internal Revenue Service

issued statutory notices to Klayman informing him that he owed that debt.  This leaves

for the Court to determine whether Debtor voluntarily and intentionally violated that duty.

The taxpayer's state of mind may be inferred from his or her conduct.  *See In re Weiss*,

2000 WL 1708802 *3 (E.D.Pa.) ("A court may properly consider a debtor's conduct after

the return and payment were due to determine whether the evasion of payment was

willful."); *see also In re Voigt*, 89 F.3d 1050,1090 (3d Cir. 1996) (explaining that intent to

evade payment of tax may be inferred from circumstances)[8]; *United States v. Mal*, 942

---

[8]While this case and the three which follow do not involve bankruptcy, the applicable Internal Revenue Code section reads almost verbatim to § 523(a)(1)(C).  Tax Code § 7102 makes a felony any "willful attempt[] in any manner to evade or defeat any tax …" 11 U.S.C. § 7102.

F.2d 682, 687 (9th Cir.1991) (evasion of payment "involves conduct *designed* to place

assets beyond the government's reach after a tax liability has been assessed")

(emphasis added); *United States v. Conley*, 826 F.2d 551,  556 (7th Cir. 1987) (rational

jury can infer intent to evade upon learning of manner in which defendant conducted his

financial affairs); *United States v. Shorter*, 809 F.2d 54, 57 (D.C.Cir.) (jury could infer

intent to evade where defendant carried on "cash lifestyle"), *cert. denied*, 484 U.S. 817,

108 S.Ct. 71, 98 L.Ed.2d 35 (1987).   For the Government, the pertinent conduct is

Klayman's diversion of property and income for the past 25 years.   It maintains that his

continued and uninterrupted enjoyment of those assets held in the name of others

shows that this was not arranged by accident; these divestitures and diversions were so

systematic, thorough and transparent as to allow but one inference as to why they

occurred: for the purpose of frustrating the IRS' collection efforts.

Klayman sees a lack of intent to evade from the numerous offers in compromise

which he tendered to the Government.   The record reflects that Klayman made four

offers from June 1991 through September 1998.    *See* Ex. 10 and 20 to Plaintiff's

Response.   What matters, however, is the probative value of such offers.   This entails

an analysis of the timing and circumstances under which they were made.   *See United*

*States v. Stoehr*, 196 F.2d 276, 283 (3d Cir. 1951) (finding that offer in compromise filed

long after taxpayer learned of tax liability and without his having made any payment on

the amount owed "destroyed whatever probative value a prompt offer might have had.");

*see also United States v. McGill*, 1991 WL 12346 *5 (E.D.Pa.) *aff'd in part, rev'd in part*

964 F.2d 222 (3d Cir. 1992) (excluding as not probative offer made six years after tax

delinquencies arose and just prior to defendant taking bench as a judge); *see also*

-14-

*Bateman v. United States*, 212 F.2d 61, 68 (9th Cir. 1954) (excluding evidence of tax

protests as not probative on question of good faith where government had already

commenced its investigation and audit of taxpayer); *and see Hayes v. United States*,

227 F.2d 540, 543 (10th Cir. 1955) (excluding evidence of offer in compromise made 2½

years after government brought fraud to tax payer's attention)

     In this case, Klayman did not make his first offer in compromise until more than a

decade after he was notified of his tax liability.  And this was after entry of the stipulated

judgment by the Tax Court, after his transfer of the Locust Street condominium to his

wife and he by the entireties, after his mortgaging of that property on the very same day

that the Government issued assessments against him, and after the District Court's

ruling that the transfer of the condominium was a fraudulent conveyance.  These

circumstances do not indicate that Klayman was making a prompt, good faith offer to

settle.  Instead, the record tends more to show that after 10 years of affirmatively acting

to avoid paying his delinquent taxes, Klayman decided that the time had come to try

settle with the Government.  He attempted this for roughly seven years but after the two

sides could not agree on a settlement, he reverted to his prior practice of placing assets

outside the reach of his creditors; e.g., having Herkly buyout D'Anne's interest in the

18th Street condo but living there himself; and having Herkly sublease the Academy

House property to Klayman's daughter Ashley while having her pay rent to Klayman.

The offers in compromise, in short, do not negate an intent to evade on Klayman's part.

They merely evidenced a hiatus in Klayman's continued efforts to keep his assets out of

the reach of the Government.   In sum, the Court cannot reasonably infer from the offers

that Klayman was not trying to avoid his tax liability.

*Klayman's Estoppel*
*Argument*

Klayman has raised one final argument not found in his Complaint: that the

Government is estopped from collecting this tax debt because it released its liens.  In

his Brief, Klayman writes that "the Certificate of Assessment and payment for Herman

Klayman indicates the the tax lien was released  – once in 1985 and 2000.  It was

inexplicably reinstated in 2003." Klayman's Brief, 11; *see also* Transcript 8.  The

Government concedes only for the sake of this motion that Klayman is correct and

responds that such an argument is nothing more than a red herring.  Whether the lien

was released or not has nothing to do with the dischargeability of an outstanding tax

*liability*.  Transcript, 9.

Section 6325 of the Internal Revenue Code provides:

> **(a) Release of lien**.--Subject to such regulations as the
> Secretary may prescribe, the Secretary shall issue a
> certificate of release of any lien imposed with respect to any
> internal revenue tax not later than 30 days after the day on
> which--
>
> (1) Liability satisfied or unenforceable.--The Secretary finds
> that the liability for the amount assessed, together with all
> interest in respect thereof, has been fully satisfied or has
> become legally unenforceable;

26 U.S.C. § 6325(a)(1).  The effect of this statute is to extinguish the lien and not the tax

liability.  *Foulds v. Commissioner*, 1989 WL 1740 (U.S.Tax Ct.) *citing Baker v.*

*Commissioner*, 1955 WL 647 (Tax.Ct.); *see also Boyer v. Commissioner*, 2003 WL

22725293 (U.S.Tax Ct.) ("It is well settled that although a certificate of tax lien release is

conclusive that the *lien* is extinguished, it is not conclusive that the *tax liability* is

-16-

extinguished." (emphasis in original)) Given that distinction, it matters not for purposes

of the Government's motion whether the lien was in fact released as Klayman

maintains.  What is being determined here is the dischargeability of certain liability.

Klayman is, of course, free to challenge the secured status of the Government's claim at

another time.

*Summary*

At the outset, the Court notes that, as discussed above, Kalyman's estoppel

argument has no merit.  Passing beyond this, and addressing the heart of the matter,

the Court concludes that Klayman's conduct over the last 25 years unquestionably

indicates willful tax evasion.  Virtually all of the traditional objective factors to which

courts look in reaching such a determination are present.  To recapitulate: 1) Klayman

has made no payments whatsoever against his outstanding tax liability, despite having

some demonstrable ability to do so; 2) the record demonstrates that he either

transferred or diverted all of his real and personal property to other entities, effectively

putting them beyond the government's reach; 3) he has consistently dealt in cash,

avoided the use of bank accounts, and formed entities to create distance between

himself and his personal expenditures, and, finally, 4) he has timed his activities in a

way which clearly corresponds to the ebbs and flows of the Government's collection

efforts against him.  The evidence Kalyman offers in response is exceedingly weak, and

certainly nothing that Klayman offers in his defense creates a triable issue of fact as to

any of the foregoing matters: his personal "affidavit," in particular, does nothing more

than to generally deny what the Government alleges; meanwhile his purported

explanations and justifications range from the implausible (easier to have corporation

keep a single set of books for business and him) to the specious (denial of fraudulent

conveyance in the face of final District Court Judgment to the contrary).  His emphasis

on offers to compromise, while potentially relevant in the abstract, fails to help him.

Indeed, given the timing of the offers and the course of his conduct, they are arguably

counterproductive because the only reasonable inference they give rise to is that the

offers were acts of desperation made only when Mr. Klayman was out of other options.

In sum, Klayman's defense to the present motion does nothing more than create the

proverbial "metaphysical doubt" regarding the validity of material issues.  As earlier

discussed, the Court is to ignore this and focus rather on whether there are genuine

issues of fact which need to be tried.  Clearly, there are not.  The evidence of record is

so overwhelmingly one-sided that it is abundantly clear that the government would

prevail at trial as a matter of law.  Consequently, the Government's motion will be

granted and the IRS' claim will be declared nondischargeable in this Chapter 11

proceeding.

An appropriate order follows.

By the Court:


_____

Dated:  <u>October 21, 2005</u>                    Stephen Raslavich
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| | : |
| HERMAN KLAYMAN | : |
| DEBTOR | : CASE NO. 04-30648 |
| _____ | : |
| HERMAN KLAYMAN | : |
| PLAINTIFF | : |
| V. | : |
| UNITED STATES OF AMERICA | : |
| DEFENDANT | : ADVERSARY PROCEEDING NO. 04-1120 |
| _____ | : |

# ORDER

**AND NOW,** upon consideration of the Motion of the United States of America for

Summary Judgment, the Plaintiff's response thereto, after hearing held September 20,

2005, and for the reasons set forth in the foregoing Opinion,  it is:

**ORDERED**, that the Motion is Granted and that judgment is entered in favor of the

United States of America and against Herman Klayman.   Mr. Klayman's tax liabilities

for the tax years 1972 through 1974 and 1976-1977 are hereby declared to be excepted

from the Debtor's discharge.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   <u>October 21, 2005</u>

-1-

MAILING LIST:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Albert A. Ciardi, III, Esquire
CIARDI & CIARDI, P.C.
One Commerce Square
2005 Market Street, Ste 2020
Philadelphia, PA 19103

David M. Katinsky, Esquire
Joshua D. Smeltzer, Esquire
U.S. Dept. Of Justice
P.O. Box 227
Ben Franklin Station
Washington, DC 20044

Nancy Mulvehill, Courtroom Deputy